OPINION.
Cheryl Davis fell on ice in the parking lot outside the condominium she owned. Davis, who hurt her back as a result of the fall, brought suit against (1) The Timbers Owners' Association (Timbers), which was her condominium's homeowner's association; (2) Towne Properties Asset Management Company (Towne Properties), which managed the condominium; (3) Green Lawn Services, Inc. (Green Lawn), which had agreed to do snow removal for the condominium; and (4) John Does, who were persons or entities who undertook some or all of the duties and actions of the first three defendants.
The parking lot where Davis fell was shared with other condominium owners. Davis fell on an area of the lot that had been plowed. According to her, the snow had been plowed into an approximately five-foot-high pile against a wall in the lot. She claimed that she slipped on ice that had been concealed by a thin layer of snow. She argued that the defendants had negligently cleared the lot and that this negligence led to her injuries.
The trial court granted summary judgment in favor of all defendants, holding that an issue of fact did not exist regarding the alleged negligence of any of them. Davis now appeals, asserting in her sole assignment of error that the court erred in granting summary judgment. A summary-judgment motion is appropriately granted if the court, viewing the evidence in the light most favorable to the nonmoving party, determines that no genuine issue of material fact remains to be litigated, and that the evidence demonstrates that reasonable minds can only come to a conclusion that is adverse to the party opposing the motion.[1]
Appellate review of summary judgment is de novo.[2]
As a preliminary matter, we note that, in opposing the defendants' motions for summary judgment, Davis submitted an affidavit in which she made various allegations regarding the weather conditions and the condition of the parking lot when she fell. In response, the defendants challenged the admissibility of various assertions in the affidavit. The defendants claimed that those assertions contradicted what Davis had previously stated in a deposition. Now, the parties dispute whether the court should have considered those assertions. But we do not need to address this issue. We conclude that, even if the assertions are accepted as true, no issues of fact exist.
On the merits of the case, one issue that the parties dispute is whether Davis slipped on a natural or an unnatural accumulation of ice. While owners or occupiers of business premises do not have a duty to clear natural accumulations of snow and ice, the owners or occupiers do have a duty regarding unnatural accumulations.[3] An unnatural accumulation is one that results from the act of a person — one caused by "factors other than the inclement weather conditions of low temperature, strong winds and drifting snow."[4] For instance, one court has held that an icy patch caused by a dripping canopy can be an unnatural accumulation,[5] and another court has held that an unnatural formation of ice can result when water from an improperly maintained downspout builds up and freezes.[6] On the other hand, courts have held that when the top portion of a natural accumulation of snow and ice is plowed, the accumulation of snow and ice that remains is still a natural accumulation.[7]
Similarly, courts have held that the thawing and refreezing of piled-up snow is a natural accumulation.[8]
Here, the record reveals that the ice on which Davis slipped was either ice that remained after the parking lot had been plowed or ice that resulted from runoff water after the piled snow had thawed. Under these circumstances, we hold that the ice at issue was a natural accumulation. There is nothing in the record about the manner in which the snow was plowed, or about the size or location of the pile of plowed snow, to convince us otherwise.[9]
This decision makes sense, as we do not believe that owners or occupiers of land should be discouraged from attempting to clear snow and ice that may accumulate on their property. As ice inevitably will be present in very cold conditions, owners or occupiers of land should not be subjected to increased exposure to liability merely because ice remains after they have made an effort to clear their lots.
Thus, a duty based on the unnatural-accumulation doctrine did not exist here. But Davis argues that the defendants assumed a duty to remove snow and ice through various documents, such as the condominium's by-laws and declarations, and through their past course of conduct in removing snow and ice. In response, Timbers and Towne Properties assert that they should not be liable. They argue that they delegated their snow-removal duties to Green Lawn, an independent contractor, who should be the only defendant held responsible for any alleged negligence. But we do not need to decide the issue of which defendant had a duty. We conclude that, regardless of who had a duty, no duty was breached.
To prove a breach in a case where a defendant has assumed a duty to remove snow and ice, the plaintiff must show that the defendant removed the snow and ice in a manner inconsistent with what a reasonable person would have done under similar circumstances — in other words, negligently.[10] Here, even with the evidence viewed in the light most favorable to Davis, reasonable minds could not have concluded that any of the defendants breached any duty owing to her. There is no evidence that the defendants plowed or piled the snow in a negligent manner. Persons who plow or shovel snow are not negligent merely because ice remains after snow is cleared.[11] And the snow had to be piled somewhere, with a certain natural runoff of water to be expected.[12] Because of the cold weather on the day that Davis fell, conditions were hazardous to begin with, and we conclude that there is no evidence that any of the defendants negligently increased the risk. Ice and snow are dangerous, but the danger is the price we pay for living in an area with an ever-changing kaleidoscope of weather.
Thus we conclude that Davis did not present evidence to withstand the summary-judgment motions, and we affirm the trial court's judgment.
Judgment affirmed.
SUNDERMANN and WINKLER, JJ., concur.
[1] Civ.R. 56(C).
[2] See McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491,609 N.E.2d 1272, 1274.
[3] See Sidle v. Humphrey (1968), 13 Ohio St.2d 45,233 N.E.2d 589, paragraph three of the syllabus.
[4] Porter v. Miller (1983), 13 Ohio App.3d 93, 95,468 N.E.2d 134, 136.
[5] See Tyrrell v. Investment Assocs., Inc. (1984), 16 Ohio App.3d 47,49, 474 N.E.2d 621, 624.
[6] See Nawal v. Clearview Inn, Inc. (Aug. 4, 1994), Cuyahoga App. No. 65796, unreported.
[7] See, e.g., Coletta v. Univ. of Akron (1988), 49 Ohio App.3d 35,37, 550 N.E.2d 510, 512; DeSalvo v. Edward J. DeBartolo Corp.
(Dec. 16, 1998), Mahoning App. No. 96 CA 229, unreported;Community Ins. Co. v. McDonald's Restaurants of Ohio, Inc. (Dec. 11, 1998), Montgomery App. Nos. 17051 and 17053, unreported.
[8] See, e.g., DeSalvo, supra.
[9] See Sasse v. Mahle (Nov. 19, 1999), Lake App. No. 98-L-157, unreported.
[10] See Kinkey v. Jewish Hosp. Assn. of Cincinnati (1968),16 Ohio App.2d 93, 95, 242 N.E.2d 352, 354.
[11] See id. at 96, 242 N.E.2d at 354; DeSalvo, supra.
[12] See Hoenigman v. McDonald's Corp. (Jan. 11, 1990), Cuyahoga App. No. 56010, unreported.